

**Dated: January 6, 2016**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Chad Russell, | ) | Case No. 14-13943-JDL |
| | ) | Chapter 13 |
| Debtor, | ) | |

## Memorandum Opinion and Order on Attorney Compensation

On November 24, 2015, this matter came on for hearing on *Debtor's Motion for Release of Funds* [Doc. 76], the *Response* filed by the Chapter 13 Trustee [Doc. 78], the *Objection of Creditor William C. Aven, Trustee for the Alex P. Aven Grandchildren Partnership* ("Aven") [Doc. 79], Aven's *Motion for Attorney's Fees and Costs* [Doc. 80], *Debtor's Objection to the Fee Request of Alex P. Aven* [Doc. 82] and the *Reply* of Aven [Doc. 83]. At issue is Aven's claim to recover post-petition attorney's fees in the amount of $13,412.41 representing proceeds of the sale of Debtor's home upon which Aven held

a second mortgage and which was paid into the registry of the Court Clerk to abide this Court's determination.[1]

## I. <u>Jurisdiction</u>

This is a core proceeding as described by 28 U.S.C. § 157(b)(2)(A), (b)(2)(B), and (b)(2)(O). The Court has jurisdiction of this proceeding by virtue of 28 U.S.C. §§ 157 and 1334, and Local Civil Rule 81.4(a) for the United States District Court for the Western District of Oklahoma and has authority to enter a final judgment on the matter presented herein.

## II. <u>Background</u>

In 2014 Farm Credit Services filed a mortgage foreclosure seeking to foreclose its first mortgage on Debtor's homestead in Logan County, Oklahoma. Aven, the holder of the second mortgage, was also named as a defendant. On September 22 , 2014, the day before the Sheriff's sale was set, Debtor filed for Chapter 13 relief. In the course of the bankruptcy, Debtor filed a Motion for Permission to Sell Homestead which the Court granted on March 2, 2015 [Doc. 51]. The Court's Order authorized the sale of the home with the sale proceeds in excess of the payoff amount for the first and second mortgages be paid to Debtor to be invested in a new residence so as to allow the proceeds to retain their exempt status.

---

[1] None of the parties filed Lists of Witnesses and Exhibits, exchanged exhibits or delivered exhibits to Chambers as required by Local Rules 9014-1 and 9017-1; accordingly, the parties presented no evidence at hearing, and the Court's findings and opinion herein are based upon the Court taking judicial notice of the docket sheet and all pleadings filed in the case (including attorney time records) and oral argument of counsel.

The sale went to closing with the property being sold for $495,000 [Doc. 63-1], more than enough to pay in full the first and second mortgage, including pre-petition attorney fees; however, a disagreement arose with regard to the amount required to pay off the second mortgage holder, Aven.  At issue was Aven's claim of the sum of $13,412.41 to be added to the payoff balance for post-foreclosure/ post-petition attorney's fees.   As a result of the dispute, the parties agreed to permit the closing to go ahead to pay the principal mortgage balances and to pay into the Registry of the Court the disputed $13,412.41.  This was done by Order entered by Judge Niles Jackson on March 13, 2005 [ Doc. 57].

For reasons unknown, Aven took no action to resolve the issue of the disputed funds.  On September 22, 2015, Debtor filed his *Motion to Release Funds* in which he disputed that Aven was entitled to additional fees beyond those awarded in the State court foreclosure case. [Doc. 76].  In his Motion, Debtor further asserted that Aven was guilty of laches, *i.e.* that the delay in Aven seeking release of the funds had deprived Debtor of money he needed to support himself and his family.  Debtor therefore sought the Court to release all of the exempt homestead proceeds to him.  The Trustee filed a *Response to Debtor's Motion for Release of Funds* stating that the Trustee had no objection to the sale proceeds which had been paid into Court Registry being turned over to Debtor so long as the Debtor utilized the proceeds in accordance with the Court's prior order. [Doc. 78].  Aven filed an *Objection to Debtor's Motion for Release of Funds* in which he asserted that the doctrine of laches did not apply because Debtor could not show that there was any prejudice or detrimental reliance by him as a result of the six month delay in Aven seeking a determination of the attorney's fee issue as to the funds in the Registry of the Court.

Page 3

Three days after filing his *Objection* to Debtor's *Motion for Release of Funds*, Aven filed his *Motion for Attorney's Fees and Costs* by which he sought the award of the full $13,412.41 on deposit.[2]  Debtor then filed his *Objection to Fee Request* [Doc. 82].  In his Objection "Debtor agrees that Aven and its attorneys may be entitled to attorney's fees but only for the reasonable and necessary time spent by such attorneys" in accordance with applicable law.  Debtor also asserted that the state court foreclosure judgment in favor of Aven was in the amount of $112,660.26 plus an attorney's fee of $21,227.04.  Debtor pointed out that " the state court judgment was issued by default, with no judicial oversight applied to the attorney's fee amounts awarded the first and second mortgage holders" and essentially resulted in a windfall to Aven.

### III.  Standards for Compensation Under 11 U.S.C. § 330

Compensation for services and reimbursement of expenses of professional persons are governed by § 330 of the Bankruptcy Code. The "threshold issue" bearing on a professional's eligibility for compensation is whether the professional's services conferred a benefit on the bankruptcy estate.  *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enters., Inc.),* 997 F.2d 1321, 1323 (10th Cir.1993). The bankruptcy court may award reasonable fees for "actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person . . .".  11 U.S.C. § 330(a)(1)(A).  "An element of whether the services were 'necessary' is whether they benefitted the bankruptcy estate".  *In re Lederman Enters.,* 997 F.2d at 1323.

---

[2]  The billing statement attached to Aven's *Motion for Attorneys Fee* [Doc. 80] showed 148.94 hours expended for a total fee of $21,500.  In oral argument at hearing Aven's counsel announced that Aven was only seeking to recover fees not to exceed the $13,412.41 on deposit with the court registry.

Page 4

Bankruptcy courts have wide discretion in awarding compensation to professionals as long as it is reasonable. *Houlihan Lokey Howard & Zukin Capital v. Unsecured Liquidating Trust (In re Commercial Fin. Servs., Inc.),* 427 F.3d 804, 810 (10th Cir. 2005). Section 330(a)(3) directs that in determining what is reasonable compensation to be awarded for the professional's services, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors including—

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(E).

In the Tenth Circuit, an adjusted lodestar method is to be used in determining reasonable compensation for a professional's services. *Connolly v. Harris Trust Co. (In re MiniScribe Corp.),* 309 F.3d 1234, 1243–44 (10th Cir. 2002); *In re Lederman Enters., Inc.,* 997 F.2d at 1323. This method takes into account all of the factors specified by

§ 330(a)(3) and the additional factors prescribed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) (the "*Johnson Factors*").  The twelve *Johnson Factors* are:

(1)     The time and  labor required.

(2)     The novelty and difficulty of the questions.

(3)     The skill requisite to perform the legal service properly.

(4)     The preclusion of other employment by the attorney due to acceptance of the case.

(5)     The customary fee.

(6)     Whether the fee is fixed or contingent.

(7)     Time limitations imposed by the client or the circumstances.

(8)     The amount involved and the results obtained.

(9)     The experience, reputation, and ability of the attorneys.

(10)     The "undesirability" of the case.

(11)     The nature and length of the professional relationship with the client.

(12)     Awards in similar cases.

*Johnson,* 488 F.2d at 717-19.

Finally, it has long been the standard in this Court that applications for compensation must contain meticulous, contemporaneous, and specific time records that include in a legible, chronological form the date a task was performed, a brief concise explanation of the task indicating its relevance to the case, the time expended recorded to the nearest tenth of an hour, and the identity of the person who performed the task.  *In re Seneca*, 65 B.R. 902 (Bankr. W.D. Okla. 1986 ).

Page 6

The Court will analyze Applicant's fee request under the above authorities, Section 330 and the *Johnson Factors.*

1.    **Time and Labor Required.**    The "lodestar analysis" begins with a determination of the amount of time reasonably required to perform the services provided by the professional.  The time so determined (typically in hours) is then multiplied by what the court finds is a reasonable rate for the professional's services.  *In re MiniScribe,* 309 F.3d at 1244.  The burden is on the party requesting fees to prove the reasonableness of the request.  *In re Commercial Fin. Servs.,* 427 F.3d at 811.  Once the court has the time records of the attorney before it, it must review the application for "billing judgment". *Case v. Unified School District 233, Johnson County, Kansas*, 157 F.3d at 1250.  Professionals, in applying for fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obliged to exclude such hours from his fee submission."  *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct.1933, 1939-1940 (1983).

Aven's counsel billed a total of 148.94 hours for post-petition work.  In the present case, the end product is not commensurate with the time expended.  While the Court does not question that the attorneys actually performed the work as disclosed in the billing statements, time *actually* expended in completing the particular task is not necessarily time *reasonably* expended . *Ramos v. Lamb*, 713 F.2d 546, 553 (10th Cir. 1983).  "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id,* at 553-554 (giving as an example time spent doing background research).

The Court believes that much of the hours billed is not reasonably compensable. Considerable time appears to have been expended by young associate lawyers attempting to familiarize themselves with bankruptcy practice and procedures. Two of the attorneys were newly admitted to practice, one after the commencement of this case, and some review of their work to excise charges reflecting their inexperience should have been performed. For example, the attorneys spent several hours on the most basic of bankruptcy principles, including research and analysis of federal court and bankruptcy court filing rules and procedure. Approximately 14.25 hours were spent on such matters. While lawyers unfamiliar with particular proceedings need to become educated with new areas, they cannot charge the cost of their education to their client or, as here, to the bankruptcy estate. Additionally, counsel filed a proof of claim which received a corrective notice from the court clerk for an error in the certificate of service. Counsel then filed an amended proof of claim for which he charged 1.4 hours for correcting his own mistake.

2.     **The Novelty and Difficulty of the Questions Involved.** While the outcome to Aven was certainly beneficial, this was a very basic Chapter 13 case that did not require a high degree of expertise. As revealed by the docket sheet, there was nothing particularly novel or difficult in this case. There is no dispute that Aven had a properly perfected second mortgage on the real estate. There was no dispute that there was equity in the property. From the inception of the case the Debtor proposed a Plan to pay off the amount of Aven's claim in full. The sale of the property resulted in Avon being paid in full within seven months of the entry of its judgment in the state court foreclosure action.

The Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is "the

responses necessitated by the maneuvering of the other side". *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998); *Ramos, v. Lamm,* 713 F.2d at 554. The Supreme Court has also recognized that part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute. *See, City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11, 91 L. Ed. 2d 466, 106 S. Ct. 2686 (1986). There was no such contentiousness in this case (at least until the attorney fee issue).

3.      **The Skill Requisite to Perform the Services Properly.**  Without in any way diminishing the legal work which counsel performed, which the pleadings reflect to be highly competent, there was nothing particularly unique or difficult about this bankruptcy. There was no evidence as to whether counsel had any expertise or specialization in bankruptcy. At least as to the associate attorneys involved, the amount of research of fundamental bankruptcy procedures would indicate that they had no such expertise.  In this case the Court does not find that the "skill requisite to perform the services properly" factor is a significant factor in making its determination.

4.      **Preclusion of Other Employment.**  There was no evidence and the Court has no reason to believe that counsel's representation of Aven precluded any other employment.

5.      **The Fee Customarily Charged.**   Counsel seeks an allowance of professional fees based on hourly rates ranging from $130 to $250 per hour which is consistent with rates charged its other clients.  The hourly rates charged by counsel are

within the range customarily charged by professionals having comparable skills and expertise in similar matters.

6. **Whether the Fee is Fixed or Contingent.**  Counsel's fees are fixed according to the time spent on behalf of Aven at counsel's prevailing hourly rate. The $13,412.41 compensation was never contingent on the availability of sufficient assets and funds in the Estate to pay such fees, but only on the allowance and approval of such fees by the Bankruptcy Court.  Considering the equity in the property, it does not appear that there was ever a significant risk in the bankruptcy proceedings that Aven would not be able to recover some, or all, of his attorneys fees incurred.

7. **Time Limitations Imposed by the Client or the Circumstances.**  No evidence was introduced as to this factor.

8. **Results Obtained.**  There is no doubt that the case was highly successful from Aven's standpoint.  Aven received 100% of the amount of its state court judgment with interest and attorney's fees.  Aven further stands to recoup some of its post-petition attorney's fees by the present action.  At hearing, Aven's counsel noted that this was not as simple a case as Debtor may have been urging.  Counsel pointed out that at one point the debt to Aven was wholly unsecured, and that counsel undertook efforts to collateralize the debt with the second mortgage on the property.  That being said, while counsel's efforts certainly helped to insure full payment of the obligation that occurred pre-petition, in fact predating the state court foreclosure action, Aven and his counsel were fully compensated for those efforts by the payment of the $21,227.04 in attorney's fees awarded in the state foreclosure judgment.  In the bankruptcy case while the outcome was successful from

Aven's standpoint achieving that success was neither complicated nor unique.  The Debtor's sale of the property as provided for in the Plan virtually assured Aven of a successful outcome.

9.    **The Experience, Reputation and Ability of the Attorneys**. The relative experience and ability of counsel is, at least in some degree, reflected in the range of hourly rates for which compensation is sought ranging from $130 per hour for associate recently passing the bar to $250 per hour for the senior partner having thirty years experience. There was no evidence presented which would bear upon this factor.

10.    **The Undesirability of the Case.**   Counsel's representation of Aven has not been undesirable.  To the contrary, counsel was well compensated in both the state court foreclosure action ($21,227.04 in a default matter) and in this bankruptcy.

11.    **Nature and Length of the Professional Relationship with Client.**   No evidence was presented as to this  factor.

12.    **Awards in Similar Cases.**   There was no evidence presented as to awards in similar cases.

13.    **Time Spent on Preparing the Fee Applications.**   "Since relative detailed, complex and burdensome fee applications are required by statute, are important to all parties, and to assist the Court, the work involved in preparing and presenting fee applications is an `actual and necessary' service" for which the professional is entitled to compensation. *In re Seneca Oil*, 65 B.R. at 910 (citing *In re Nucorp Energy, Inc.,* 764 F.2d 655, 659 (9th Cir. 1985).  Pursuant to 11 U.S.C. § 330(a)(6), this Court is to determine the reasonableness of compensation for the preparation of the fee application by examining

the skill reasonably necessary to prepare the application. While the preparation of a fee application is compensable, all good things must have some reasonable limits. Consequently, many courts have found that the hours allowed for preparing and litigating the attorney fee application should not exceed 3-5% of the total hours in the main case. See e.g. *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986); *In re Pettibone Corp.*, 74 B.R. 293 (Bankr. N.D. Ill. 1987). While this Court does not choose to impose any arbitrary percentage to determine the amount allowable for fee application preparation, rather preferring to consider fee applications on a case-by-case basis looking at the facts and circumstances of each in determining what was required of the attorney in preparing the application. Suffice it to say that in the present case the Court finds the time expended to be excessive.

Of the total hours shown on the billing statements of 148.94 hours, 52.1 hours was spent on preparation of the fee application - 35% of the total request. Based upon the Court's experience and familiarity with such fee applications and a review of the records in this case, the Court believes that a reasonable time expended in the fee application preparation would be, at the most generous to counsel, four (4) hours at a blended hourly rate of $160 or $640.

### IV. Conclusion as to Fees

The Court has thoroughly reviewed the time records submitted by Aven's counsel. Those records indicate the expenditure of 148.94 hours, although Aven has agreed to "cap" any fees at the $13,412.41 on deposit with the court clerk. The Court has no reason to question that counsel in fact expended the time which it claims. That, however, does not

foreclose this Court's responsibility to determine the reasonableness of the fee. A bankruptcy court may consider the "quality and *efficiency* of counsel's services" in order to determine the appropriate lodestar rate. *Dawson v. Washington Mutual Bank, FA (In re Dawson)*, 390 F.3d 1139, 1152 (9th Cir. 2004). The bankruptcy court has broad discretion to determine the number of hours reasonably expended. "Even where the evidence supports that a particular number of hours were worked, the court may give credit for fewer hours if the time claimed is "excessive, redundant, or otherwise unnecessary". *Id.* In making that determination as to the reasonableness of the time expended, the bankruptcy judge should weigh the hours claimed against his or her own knowledge, experience, and expertise of the time required to complete similar activities. See e.g. *In re Garey,* 258 B.R. 356, 363 (Bankr. E.D. Va. 2000). The Court has applied those considerations in determining what it believes to be a reasonable fee in this case.

In addition to the 52.1 hours incurred in the preparation of the fee application discussed above,[3] Counsel's records reflect that he/they expended 10.8 hours very early on in the case in an analysis of "legal options and strategy going forward" in a Chapter 13 case. Another approximately 10.8 hours was expended in preparing and filing a three page (exclusive of exhibits) Objection to Plan. Approximately 4.5 hours was expended in preparing a Proof of Claim. When the Proof of Claim was apparently regarded as insufficient, another approximately 2.5 of hours was expended in preparing and filing an

---

[3] In addition to time expended in the preparation of the fee application, Arven's counsel incurred time in defending the fee application. Counsel has not sought to recover fees for defending the application. Furthermore, under the recent U.S. Supreme Court decision in *Baker Botts LLP v. Asarco, Inc.*, 576 U.S.___, 135 S.Ct. 2156 (2015), such fees for *defending* the fee application would not be recoverable.

Amended Proof of Claim.   Another 10.8 hours was expended on preparing for and attending a hearing on the objection to confirmation which was resolved by agreement. Another 4.8 hours was expended for preparation and attendance at the first meeting of creditors.  When Debtor filed a *Motion to Sell* which proposed to pay Aven in full, Aven's counsel expended more than 2.5 hours reviewing and discussing the same.  When Debtor filed Motions to Avoid Liens, Aven's counsel spent 3.1 hours reviewing and discussing the same though such motions would have had no impact upon Aven's secured claim in bankruptcy.  The Court regards all of the time spent on these matters far in excess of what would normally and reasonably be required.

There was nothing difficult or extraordinary about this Chapter 13 case.  The only "unique" aspect was the fact that after initially proposing payment in full to both the first mortgagee and Aven as second mortgagee, Debtor decided to sell the property and paid both mortgages in full.  At the time the property was sold, the parties apparently felt that the $13,412 held in escrow would be sufficient to pay Aven's attorney's fees and thus established an escrow for the same.  At that point, much of the work of Aven's counsel had already been incurred except for the subsequent fight that was about to occur with regard to its attorney's fees. Given the relatively routine nature of the case to that time, a reasonable attorney's fee would not approach the $13,412.21.

The evaluation of reasonable attorney's fees and the reduction of those fees are within the sound discretion of the court.  "A court can exclude excessive and unreasonable hours from its fee computation by making an 'across-the-board' reduction in the amount of hours." *In re World Com, Inc.*, 386 B.R. 496 (Bankr. S.D.N.Y. 2008); *In re Pacific*

Page 14

*Express, Inc.*, 56 B.R. 859 (Bankr. E.D. Cal. 1985); *Bivens v. Wrap It Up, Inc*., 548 F.3d 1348, 1351-52 (11th Cir. 2008) (to arrive at a reasonable number of hours, the Court may employ one of two methods: item by item or across-the-board reduction).  Based upon an analysis of the evidence, Court finds that an across-the-board reduction of 50% of the $13,422.21, or $6,706.05 plus costs of $252.33, is appropriate to arrive at a reasonable award of attorney's fees.

IT IS THEREFORE ORDERED that Aven is hereby awarded attorney's fees and costs in the amount of $6,958.38 from the funds on deposit with the Court Clerk.

### V. The Bankruptcy Court Cannot Re-examine or Otherwise Take Into Account the State Court Award of Attorney Fees in Determining Post-Petition Fees

Debtor raised the issue that Aven was awarded attorney's fees of $21,227.04 as part of the state court judgment in which its second mortgage position was foreclosed. These fees were paid from the proceeds of the sale of Debtor's residence in the bankruptcy.  Debtor points out this fee award of $21,227.04 works out to an average of $2,358.56 for each page of pleadings which had been filed on Aven's behalf in the state court case.  Debtor thus argues that Aven and his counsel have already been more than amply compensated.

This Court is well aware that a debtor-defendant in a state court action may have neither the incentive, and other resources, to defend an action by a secured creditor to realize on its security and, thus, often does not seriously contest the reasonableness of any attorney's fees and expenses that may be prayed for by the secured party.  This may well

have happened in this case.  In addition, it is common knowledge that when a default judgment is entered in a foreclosure action in a state court proceeding, the state court will be often less than exacting in granting fees.  Often the fees awarded have little or no relationship to the actual amount of time expended by the secured creditor's counsel in prosecuting the action, or the hourly rate actually charged by him to his client, as the state court's inquiry on the issue is often superficial at best.  This Court cannot say whether the attorney's fees awarded Aven in the state court case were excessive, but whether they were or not this Court cannot either alter that award or take it into consideration in determining the post-petition fees to be awarded.

Bankruptcy courts have been divided as to whether a pre-petition state court determination of the foreclosing mortgagee's reasonable attorney's fees would be given preclusive effect in determining the reasonable attorney's fees to which a mortgagee is entitled as an over-secured creditor in the mortgagor's subsequent Chapter 13 proceeding. See e.g., *In re Harper,* 146 B.R. 438 (Bankr. N.D. Ind. 1992) (state court default judgment for attorney's fees not entitled to preclusive effect as "reasonableness" of secured creditor's attorney's fee under § 506(b) is determined solely by federal law); Contra, *In re Epps,* 1999 WL 33486080 (Bankr. D. S.C. 1999) (*Rooker-Feldman* doctrine

bars the bankruptcy court's review of a final state court judgment).  However, this Court need not determine whether rules of issue preclusion or the Rooker-Feldman doctrine apply.  While Debtor may have considered the state court foreclosure judgment for attorney's fees excessive, he did not appeal the judgment nor object to them being paid at the time of the closing of the bankruptcy court-approved sale and signed off on the

closing statement which provided for their payment.  Debtor will not be heard to complain of the state court awarded attorney's fees at this juncture of the bankruptcy.

### VI. Aven Did Not Waive Any Rights Nor Was Guilty of Laches in Delaying Six Months After the Sale of the Property Before Filing His *Motion for Attorney's Fees*

As stated above, in his *Motion to Release Funds* Debtor asserts that Aven's six month delay in filing a motion for payment of his attorney's fees from the funds on deposit constituted laches. [Doc. 76].  Debtor asserts that the delay in Aven seeking release funds had deprived Debtor of money he needed to support himself and his family. [*Id*.].  Aven responded that the doctrine of laches doesn't apply because Debtor has not shown there was any prejudice or detrimental reliance by him as a result of the six month delay, and there is no statutory or other authority which required Aven to seek a determination of the attorney's fees within the six month, or any period. [Doc. 78].

Laches involves an unreasonable delay by one party in the enforcement of a claim where that delay causes another party to be prejudiced as a result of the delay.  *Olansen v. Texaco, Inc.*, 1978 OK 139, 587 P.2d 976.  In legal significance, it is not merely delay, but a delay that causes a disadvantage to another.  *Marshall v. Amos*, 1968 OK 86, 442 P.2d 500.  "The party invoking the defense of laches must prove that it suffered some irreparable damage or loss because of a change of conditions in relying on the inaction and indifference of the other party."  *Clark v. Unknown Heirs of Osborn*, 1989 OK 145, , 782 P.2d 1384, 1386.  Being an affirmative defense, the burden is upon Debtor to prove that Aven's delay in commencing these proceedings has operated to his disadvantage. See *Stallings v. White*, 194 OK 649, 153 P.2d 813 (Okla. 1944).

Page 17

There were only the conclusory allegations in Debtor's pleading and no testimony or other evidence produced by Debtor to support his laches theory, let alone evidence to sustain his burden of proof. Aven is correct in asserting that there was no obligation or deadline on his part to the filing a motion to determine the amount of attorney's fees from the funds on deposit. Furthermore, Debtor always had the ability to move the court to adjudicate ownership to the funds on deposit if he felt the matter was not timely being moved toward resolution. This is exactly what Debtor did when he filed his *Motion to Release Funds* on September 22, 2015, precipitating Aven's filing of his *Motion for Attorneys Fees.* Accordingly, the Court finds that Aven was not guilty of laches barring his entitlement to any of the funds on deposit.

### VII. Determination of Debtor's Motion to Release Funds

As stated above*,* before the Court is not only Aven's *Motion for Attorneys Fees* but also Debtor's *Motion to Release Funds*. [Doc. 76]. Debtor's right to the funds on deposit was not absolute. First, the proceeds were subject to Aven's right to attorney's fees to be determined by the court. Second, under the Court's *Order Authorizing Sale of Debtor's Homestead and Granting Compensation* [Doc. 51], Debtor's right to funds required him to reinvest the proceeds in the new residence. It is apparent that this Order was to permit Debtor to have such funds only to the extent such funds constituted exempt property. It is well established under Oklahoma law that in order for the proceeds of a voluntary sale of the homestead to be exempt within the exception provided in Article 12 of the Constitution there must exist at the time of sale a good faith intent to reinvest the proceeds in another homestead, and that the reinvestment be made within a reasonable time.

*Harrell v. Bank of Wilson,* 1968 OK 120, 445 P.2d 266*; Farmers State Bank of Newkirk v. Hess*, 1926 OK 789, 251 P. 73.  To the extent that the funds on deposit were not to be utilized to reinvest new homestead, such funds would not be exempt but would belong to the bankruptcy estate/trustee.

Debtor's stated reason for having the funds released to him was that the funds "being held by the Clerk are part exempt proceeds from the sale of the debtor's homestead. . . (and) Debtor requires this money to support his family and to pay his living expenses".  [Doc. 76 ¶ 8].  That Debtor needs the funds for living expenses does not make them exempt for Debtor's use.  Perhaps just as importantly, such use of funds is inconsistent with the Court's order allowing Debtor's use of the funds solely for the purpose of reinvesting them in another homestead.  The Court is aware that at the closing of the sale of the property, after the payment of the first and second mortgages, there was an equity of approximately $130,000 which was paid to Debtor.  [Doc. 61-3].  The Court does not know whether Debtor has, in fact, utilized all or part of those funds to reinvest in a new homestead.  At the hearing, Debtor's counsel advised the Court that he did not know whether Debtor had, in fact, purchased a new homestead with any of the sale proceeds. Until such time as the Court knows whether the proceeds on deposit could possibly be utilized by Debtor to purchase another homestead, it cannot determine whether Debtor is entitled to any such funds as sought by his *Motion to Release Funds*.

**IT IS THEREFORE FURTHER ORDERED** that any funds on deposit after the application of the same to the attorney fees and costs awarded herein remain on deposit until such time as the Court can determine whether such funds belong to the Bankruptcy Estate or to Debtor in accordance with previous orders of this Court.

# # #